Case number 18-3940, United States of America v. Ricardo Veloz-Alonzo. Oral argument not to exceed 15 minutes per side. Christian Grostek, for the appellant, you may proceed. Thank you. Good morning. Christian Grostek on behalf of Mr. Veloz-Alonzo. I'd like to reserve three minutes for rebuttal. May it please the court, this is a bit of an unusual case in that since briefing, this court has issued two published decisions that foreclose our core argument. I'd like to take my time to explain why we believe those decisions were wrongly decided and urge the panel to express its disagreement. At the outset, there's an area of no dispute. Just before you get into that, so you're saying the Santos-Santos case controls this case? Hernandez-Perez v. Whitaker and Santos-Santos v. Barr, yes. Yeah, okay, thank you. By statute, there's a point of no dispute here at the outset, which is by statute and after the Supreme Court's decision in Pereira v. Sessions, a notice to appear requires the time and place of the hearing to be a valid notice to appear, and it must be served on the person involved.  That's what the government argued in Pereira, is that the regulation specifically 8 CFR 1003.18b could reinterpret the statute was the argument presented there, and the Supreme Court rejected that argument. The court held that there was no Chevron deference because the statute was not ambiguous, and that the exception, the language where practicable to include the time and place of the hearing was inconsistent with the statute. Now, to the extent that the government now argues that the regulations are separate from the statute, that's not accurate, and that's the core argument that we would present. The regulations adopted the identical term from the statute, obviously. They also have to be served on the person by regulation and by statute, and so even then within the regulations now after Pereira, the government's position drops down to that the notice to appear language means one thing in one context in the terms of service, and another in the other context in terms of filing with the immigration judge and vesting jurisdiction in the language of the regulation. The regulation cites Section 1229 of the statute as its statutory authority, which is the language defining what a notice to appear must contain. And the Federal Register, when the agency was adopting this regulation, it said that the proposed rule implements the language of Section 1229. It did not contend that it was adopting a different definition. That's the ground that the agency invoked when it took this action, when it adopted the regulation. And under Michigan versus EPA, that's the only ground the government can rely on now. It can't come back 20 years later and say, well, actually, we were adopting a completely different definition. We weren't implementing the language. We were adopting a different definition. As a practical matter here, number one, if we took the strong version of what you're saying, would that knock out probably the vast majority of all of the proceedings for the past five, ten years? Yes. As the government presented it. Take the strong version. Second question is, in these cases, in the end the government does provide a time and place because otherwise there wouldn't be a proceeding. Why isn't that second notice itself the adequate notice to appear? Under the regulations, under the statute and the regulations, this is the same argument the government made in Pereira, which is can we cure this by a second document that contains that time and place? And the court held no, the notice to appear. For those purposes. So I'm asking you, is your argument simply that since they said that in Pereira that ends the inquiry because for every purpose, as opposed to for jurisdiction, which is clear, I mean the language is the same, but clearly the use of a ten year stop time rule is quite different as a legal matter from whether there's jurisdiction at all, right? Yes. So in a sense the question is whether we or the Supreme Court would interpret for those purposes exactly the same argument. Yes, that's correct. And the practical effects, I mean that's something the government has raised. The government raised it in Pereira and again here. And I would just point out that, again, under what the Supreme Court said was the unambiguous language of the statute and going back to when the agency adopted the regulation, this was supposed to be happening all along. The agency itself said this where practicable exception that we're adopting, we're going to endeavor to do it by April 1, 1997. That's again at page 449 in the Federal Register. When you say they would do it by? They would endeavor to comply with the requirement that a notice to appear contain the time and place of the hearing. They said, again, that's at 62 Federal Register, page 449. They said we're going to endeavor to do this by April 1, 1997. May not be able to because the two examples they cited were power outages or computer crashes. There was no idea then that, well, a few years from now, in approximately 100% of cases we're just going to not do it, which is what happened. So, I mean, this is the agency deciding somewhere along the way, we're not going to follow what the statute unambiguously says and what we ourselves said we were going to do. And now, I mean, admittedly, we have a message. The real practicality is at the time we're ready to file a notice to appear, is we've caught you in some sense. We don't know how many judges we've got, how many courtrooms we've got, you know, that sort of thing. Isn't that the reality? That's the reality. That appears to be the reality that the government's relying on. Is that an unreasonable reality? It may be something where the agency needs to go back either to Congress or to notice and comment rulemaking and change their procedure for doing this. But post hoc, to go back and say, well, we didn't mean this all along, this wasn't what we were trying to do, that's not how an agency is allowed to act under our system of government. And I think I would just add that, you know, the language here, jurisdiction vests and proceedings commence upon the filing of a notice to appear, that indicates subject matter jurisdiction. There's no contention in this case that it doesn't. The government has contended that in other cases. I mean, I know the court is aware that this issue has been percolating across the country. But from the Shugunley decision in the Fourth Circuit, Marco out of the Southern District of Ohio, which both, you know, predated this issue, and the Supreme Court itself has said, you know, we look to whether there's a clear statement. That's an Auburn Regional Medical Center. And that's a clear statement, obviously, that jurisdiction vests upon this filing. Pereira itself, I'd just like to direct the court to page 1116 in the Supreme Court Reporter. It distinguishes the notice to appear from what it considered in a case called Becker v. Montgomery. And in that case, the court held that signing a notice of appeal in a normal, you know, appellate process in federal courts, that's not a jurisdictional requirement. That's merely a ministerial requirement. Again, that's at page 1116. The Supreme Court in Pereira said, this is different. This is a substantive requirement. And so, you know, this is required in the notice to appear and can't simply be omitted at the agency's discretion. Unless the court has any questions, I'd reserve the balance of my time. Thank you. Thank you. Good morning, Your Honors. May it please the Court. Danielle Angeli, on behalf of the United States. This is Beloso Alonzo's second conviction for illegal reentry. In his 2006 case, he did not attempt to challenge the Immigration Court's jurisdiction, nor did he challenge it in 2002, when he was initially removed, or when he was reinstated for removal in 2006, 2014, or 2018. But here, he's impermissibly seeking to collaterally attack that 2002 removal order. The District Court properly denied the defendant's motion to withdraw his guilty plea and motion to dismiss the indictment for two reasons. First, the defendant has failed to satisfy any of the three requirements set forth in 1326D, allowing him to collaterally attack the removal order. Second, as the defendant concedes, two panels of this Court in binding decisions have held in Hernandez-Perez and Santos-Santos, that a notice to appear need not contain the date and time in order for the Immigration Court to have jurisdiction. So looking first at the collateral attack, Section 1326D sets forth three requirements that a defendant must satisfy before he can collaterally attack the underlying removal order. These require, first, that the defendant exhaust any administrative remedies that may have been available. Second, that the defendant show that the deportation proceedings at which the order was issued improperly deprived him of an opportunity for judicial review. And third, that the entry of the order was fundamentally unfair. This Court has held that because the requirements are in the conjunctive, a defendant must satisfy each of the three prongs before he can collaterally attack the removal order. And the defendant does not dispute that he has not exhausted his administrative remedies. He received his notice to appear, and on that same day he stipulated to his removal, and he waived his hearing, and he also waived his right to appeal. And Martinez-Roca of this Court held that a defendant fails to exhaust his administrative remedies where he does not contest the grounds on which he's found deportable, which is exactly what happened here. Additionally, the District Court found that the defendant waived his right to a hearing, his appeal, and stipulated to the facts underlying his removal. Additionally, the District Court relied on Qureshi, a Seventh Circuit opinion, where the Court held that when a defendant concedes removal, he's waiving any objections to the immigration court's jurisdiction. And looking to the second prong, the deportation proceedings at which the order issued were improperly deprived the alien of an opportunity for judicial review. Again, we didn't have a hearing because the defendant waived it. He stipulated to his removal, he's waived his right to a hearing, he waived his right to an appeal, and then he was deported. And finally, they have... I think all these arguments, if the immigration judge didn't have jurisdiction, these arguments are not really availing. It's really the jurisdiction argument here, isn't it? Your Honor, we would disagree because it's confusing because the merits are sort of wrapped up into this. However, this Court has held in unpublished decisions and in the immigration context that jurisdiction best, when a notice to appear is filed, even if that is defective. We've got a recent case in our court that seems to address specifically the jurisdictional issue here. Normally, we would follow, and we are required to follow, this prior precedent from our court. So, we're in a situation where what you're talking to us about is probably, as Judge Bush suggests, not taken as much of anywhere. Yes, Your Honor, this Court has held in both Hernandez-Perez and Santos-Santos that a notice to appear that does not contain the date and time does not strip the immigration court of its jurisdiction. Those are binding on this Court, and similar to the Ninth Circuit and Karen Giffey, it cited the Hernandez-Perez decision and it reached the same conclusion. It held that when the notice to appear satisfied the regulation requirements, that was sufficient to vest the immigration court with jurisdiction. So, that's where we're at right now. There's no claim that the notice to appear did not satisfy the regulation requirements. And the reason why we get there is because we first look at the INA. And as this Court has held, and many other courts have held, the INA is silent as to when and how jurisdiction vests. Therefore, we have to look to the regulations promulgated by the Attorney General to figure this out. When and how does jurisdiction vest? And the regulations tell us that jurisdiction vests upon the filing of a charging document. One of those charging documents set forth in the regulations is a notice to appear. However, that has different requirements than the notice to appear that appears in the statute in 1229. However, 1229 does not speak to jurisdiction at all. So, we're just looking at what a notice to appear must contain in the regulations in order for the court to be vested with jurisdiction. And because the notice to appear here satisfied all of the regulation requirements, then that shows that the immigration court did properly have jurisdiction. And if we rule that way, we don't need to get into your other arguments? Well, Your Honor, we believe that he cannot even reach the merits of the argument because he has not satisfied 1326D, all three requirements. So, the court need not even get to whether or not the immigration court had jurisdiction because he cannot collaterally attack that order. But alternatively, the court would be able to rule just on the merits following Santos-Santos, following Hernandez-Perez, and it can show that the immigration court did have jurisdiction as well. Additionally, Your Honor, Santos-Santos, in a footnote, it explained that the difference between the notice to appear and the regulations and the statutes did not mean that it was inconsistent. Just because the Attorney General somewhat unartfully called the document a notice to appear in the regulations, which also was contained in the statute, that does not mean that they are inconsistent. And again, because the notice to appear properly followed the regulation requirements, jurisdiction then vests. And again, the same day when he was served with his notice to appear, that's when the defendant stipulated to his removal, waived his right to a hearing, and waived his right to appeal. So there was no secondary notice of hearing that was served on him because that wasn't necessary in this case because the same day he stipulated and waived. The part, though, that you just said about the Attorney General somewhat unartfully called it a notice to appear, does that mean it would have been better or clearly okay if it said, Jurisdiction vests on the filing of a charging document. A charging document includes broccoli, and therefore we're going to call this stuff broccoli. That would be a better way to phrase it. I believe the Santos-Santos court in the footnote said something along the lines of, we may question the Attorney General's wisdom in calling the document the same name as one that's referred to in the statute, but they're clearly separate documents with separate requirements that have separate purposes. And just to make a quick distinction between Pereira, Pereira was a very narrow decision. The Supreme Court, in the majority opinion, stated three times that it was a narrow question that it was asking. It was looking specifically at the stop-time rule. And in that statute, a notice to appear was defined under Section 1229A. We do not have that in the regulation, and that is why Pereira has no effect on this case. And the court properly held in Santos-Santos and Hernandez-Perez that Pereira does not affect the immigration court's jurisdiction. Additionally, if the court were looking to express concern about Hernandez-Perez or Santos-Santos, because of the Section 1326D arguments, because he has not satisfied any of those three requirements, this would be a bad vehicle for the court to look for some kind of en banc review of those cases. Again, the defendant is trying to elevate form over substance because he did not have the date and time on the notice to appear, even though on the very same day, while he remained in ICE custody, he stipulated to his removal and he waived his hearing. So there was no risk that he was going to miss his hearing. There was no due process violation. He has not been able to show that this was fundamentally unfair. He must show both a due process violation from the defects in the proceeding and actual prejudice. So in other words, he has to show that but for the errors complained of, he would not have been deported. But again, he agrees to the facts. He agrees he was here illegally, and he agrees that he should have been properly removed. So he has not satisfied any of those 1326D requirements. And as the court held, I'm in Hernandez's presence, Santos-Santos, PERA has no effect here on the Immigration Court's jurisdiction. So if the court has no further questions, we ask that the court affirm the District Court's decision. Thank you. Thank you. Three brief points on rebuttal. Regarding the 1326D requirements, this court and other courts have held that exhaustion and the opportunity for judicial review is excused where the proceeding is void or pursuit would be futile. We cited those cases that are brief on pages 14 to 16 and reply 1 to 2. And that includes in specifically this context, from other circuits at least, in the Pacruiz decision, in the Eighth Circuit, the Lopez decision in the Ninth Circuit. And I cited this case just briefly, but I'd like to direct the court to the McCart decision out of the Supreme Court. It's on our reply at page 1. That specifically discusses agency decisions that form an element of a criminal offense. And I believe that that entire opinion illustrates the point that I'm making. On the Qureshi and Waiver arguments, those are matters of personal jurisdiction. What kind of waiver? I'm sorry. Counsel cited the Qureshi case out of the Seventh Circuit. That's my fault. And then also suggested that Mr. Velas-Alonzo waived his right to raise this issue. Those both address personal jurisdiction. And as I addressed in my opening argument, this is subject matter jurisdiction. I'd have to just answer Judge Bush's question myself. It all comes down to the subject matter jurisdiction question, yeah. And then just on the point about that the Attorney General was inartful, the Attorney General wasn't inartful. The Attorney General said he was implementing the notice to appear requirements from the statute. It's only this post hoc argument, after all this has already occurred, that the government is going back and saying, well, the Attorney General meant all along to do something different. And that's under Michigan v. EPA. That's not how the law works. We would urge this court simply to express its disagreement. Primarily, this is an unusual situation because the issue has been percolating in courts. The Qureshi decision, there's a pending petition for a hearing. There are pending appeals in the Fourth and Fifth Circuit. So we believe that, and obviously the court's well aware that many, many district courts have weighed in over the past six months or so. So we believe that additional views are helpful. Are there any appellate courts that have taken your view so as to create a circuit split? Not yet. Only the Ninth and this has weighed in and published decisions. And as I recall, do you have an argument that some district courts have? Yes. A rough ballpark, I would say about somewhere between a quarter and a third of the district courts have taken our view and obviously the rest. Are those under appeal by the government? For example, the Fifth Circuit pending appeal that I referenced is in Pedroza-Rocha, which is a decision that the government, where our side prevailed on this issue. The Fifth Circuit has also held something like 20 pending appeals pending its decision in Pedroza-Rocha. Are there any other circuit areas where the district courts have been on your side? Yes. The Eighth, there was a decision on North Dakota in our favor. The Fourth Circuit, I'd have to go back and check. I know there's a pending appeal. I'm not sure out of which side. So you think those are all under appeal, so we'll hear from a lot of circuits. That's exactly correct, Your Honor. So unless the court has any questions, thank you for your time. Thank you. Thank you. Well, thank you all for your arguments. And we'll consider the case carefully, but it looks like this is going to be a fruitful area of litigation over the next near future. And perhaps at some point someone other than our court will tell us what to do.